```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
ALYONA MINKOVSKI and MATTHEW
STOLLER,

                         Plaintiffs,                    MEMORANDUM & ORDER
                                                        18-CV-1034 (MKB)

              v.

UNITED STATES DEPARTMENT OF
TREASURY,

                         Defendant.
---------------------------------------------------------------
```

MARGO K. BRODIE, United States District Judge:

Plaintiffs Alyona Minkovski and Matthew Stoller commenced the above-captioned action on February 16, 2018 against Defendant the United States Department of Treasury (the "Treasury"), (Compl., Docket Entry No. 1), seeking records concerning Sheryl Sandberg, former Chief of Staff to then-Secretary of the Treasury Lawrence H. Summers, pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a) ("FOIA"), (Am. Compl., Docket Entry No. 15).  Currently before the Court is the Treasury's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Def. Mot. for Summ. J. ("Def. Mot."), Docket Entry No. 23; Mem. in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 26.)  Plaintiffs oppose the motion.  (Pls. Mem. in Opp'n to Def. Mot. ("Pls. Mem."), Docket Entry No. 27.)  For the reasons set forth below, the Court grants the Treasury's motion for summary judgment.

## I. Background

### a. Plaintiffs' FOIA request

On June 13, 2017, Plaintiffs, both of whom are independent journalists, submitted a FOIA request to the Treasury seeking records relating to Sandberg, who served as Chief of Staff to Summers from approximately 1996 to 2000, (the "FOIA Request").[1] (Am. Compl. ¶¶ 7, 10; Pls. Letter to the Treasury dated June 13, 2017, annexed to Am. Compl. as Ex. A, Docket Entry No. 15; Def. Statement of Undisputed Facts Pursuant to Local R. 56.1 ("Def. 56.1") ¶ 1, Docket Entry No. 24.) Plaintiffs requested the following records:

> **I. Topics** - All of Ms. Sandberg's records from the period 1996 through 2000 relating to:
> A. The Gramm-Leach-Biley Act
> B. The Commodities Future Modernization Act
> C. China Permanent Normal Trade Relations (or PNTR)
> D. Glass-Steagall
> E. Brooksley Born, former Chairperson of the Commodities Futures Trading Commission
> F. Google Inc.
> **II. Treasury Correspondence** – All of Ms. Sandberg's correspondence during the period 1996 through 2000 with the following individuals:
> A. Members of Congress or Congressional staff
> B. Members of the News Media [defined as the following organizations: Businessweek, the Financial Times, Barron's, the Washington Post; the New York Times; the Wall Street Journal; CBS News; ABC News; NBC News; MSNBC; CNN; and Fox News].
> C. Former Treasury Secretary Robert Rubin
> D. Any employees or representatives of Google, including but not limited to Eric Schmidt and Larry Page
> E. Any employees or representatives of Kleiner Perkins Caufield
> F. Any employees of Citicorp, Travelers Group, JP Morgan, Chase Bank, BankAmerica, Nationsbank, Wells Fargo, Goldman Sachs, Long Term Capital, or Berkshire Hathaway
> **III. Later Correspondence** – All notes of any meetings and all

---

[1] Plaintiffs allege that during the 2016 presidential election, Sandberg, who was employed by Facebook, was being considered for the position of Secretary of the Treasury. (Am. Compl. ¶ 9.)

emails between Ms. Sandberg and the following Treasury Secretaries after she left office:
A. Larry Summers
B. Paul O'Neill
C. Kenneth Darn
D. John Snow
E. Robert Kimmitt
F. Henry Paulson
G. Stuart Levey
H. Timothy Geithner
I. Neal Wolin
J. Jack Lew
K. Adam Szubin
L. Steven Mnuchin

(*See* FOIA Request 2–3; Def. 56.1 ¶ 2.) By letter dated July 19, 2017, the Treasury acknowledged the FOIA Request and assigned it tracking number 2017-137 (the "Acknowledgment Letter"). (Acknowledgment Letter, annexed to Am. Compl. as Ex. B, Docket Entry No. 15; Am. Compl. ¶ 12; Def. 56.1 ¶ 3.)

### b. The Treasury's search for records responsive to the FOIA Request

Treasury personnel worked with the Office of the Executive Secretariat ("OES"), which maintains records for the Office of the Secretary and the Chief of the Staff, and with the Office of the Chief Information Office ("OCIO") to conduct searches for agency records responsive to Plaintiffs' FOIA Request and "identify the most likely sources of potential records." (Def. 56.1 ¶ 4; Decl. of Andrew B. Stein ("Stein Decl.") ¶ 6, Docket Entry No. 25.) After discussions with OES and OCIO, Treasury personnel "determined that the most likely sources of responsive materials would be: (a) Ms. Sandberg's emails during her employment at Treasury (approximately 1996 to 2000); (b) emails of the current and former Secretaries of the Treasury listed in Plaintiffs' June 13, 2017 letter; and (c) electronic records of the Office of the Secretary and Chief of Staff during Ms. Sandberg's employment at Treasury." (Def. 56.1 ¶ 5; Stein Decl. ¶ 6.)

3

However, in 2000, the Treasury transitioned to a new email system, and, as a result, Treasury personnel were unable to search emails that Sandberg sent or received during her employment at the Treasury because "the majority of legacy emails sent or received prior to that time and Ms. Sandberg's entire email account [we]re no longer maintained by Treasury and [we]re not accessible in any form." (Def. 56.1 ¶ 6; Stein Decl. ¶ 6.) Although unable to search Sandberg's email account, on May 17, 2018, OCIO searched available emails of current and former Secretaries of the Treasury listed in Plaintiffs' FOIA Request for any communications with Sandberg from her last date of employment at Treasury, in 2000, through May 17, 2018. (Def. 56.1 ¶ 7; Stein Decl. ¶ 8.) Treasury personnel searched using the terms "Sandberg," "Sheryl," "Sheryl Sandberg," "@leanin.org," and "@facebook.org." (Def. 56.1 ¶ 7; Stein Decl. ¶ 8.) These searches did not produce any responsive records. (Def. 56.1 ¶ 7; Stein Decl. ¶ 8.)

The Treasury also searched for notes of meetings between Sandberg and current and former Secretaries of the Treasury listed in Plaintiffs' FOIA Request by reviewing records maintained by OES, but the search did not produce any responsive records. (Def. 56.1 ¶ 8; Stein Decl. ¶ 8.)

In addition, the Treasury searched electronic records maintained by the Office of the Secretary "by querying OES electronic databases for all materials authorized by Ms. Sandberg during her employment at Treasury." (Def. 56.1 ¶ 9; Stein Decl. ¶ 9.) The Treasury Office of the General Counsel ("OGC") reviewed the documents that were located, and "determined that one of them was related in part to the subjects enumerated in Plaintiffs' [FOIA Request]," (the "Responsive Document"). (Def. 56.1 ¶ 9; Stein Decl. ¶ 9.)

c. **The Treasury's response to Plaintiffs' FOIA Request**

By letter dated July 5, 2018, the Treasury provided a final response to Plaintiff's FOIA

Request and produced the Responsive Document, ("Treasury's Final Response"). (Treasury's Final Response, annexed to Stein Decl. as Ex. D, Docket Entry No. 25-4; Def. 56.1 ¶ 10; Am. Compl. ¶ 14.) Certain portions of the Responsive Document were withheld as non-responsive. (Treasury's Final Response; Am. Compl. ¶ 14.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. The Treasury conducted an adequate search for records responsive to Plaintiffs' FOIA Request

The Treasury argues that Plaintiffs' FOIA claim must be dismissed because it conducted adequate searches reasonably calculated to locate records potentially responsive to Plaintiffs'

FOIA Request and therefore did not improperly withhold records. (Def. Mem. 9.)

Plaintiffs argue that the search was inadequate because (1) the determination concerning likely sources of responsive records was made unilaterally by the OGC; (2) the Treasury failed to comply with its "obligations to maintain public records of historical significance"; (3) the Treasury failed to establish that "the three purportedly 'most likely' sources of responsive materials are, in fact, the only (or, indeed, the actually 'most likely') places where responsive materials are stored"; (4) the Treasury failed to make a good faith effort to search hard copy documents; (5) the Treasury should have searched by "issue" rather than by Sandberg's "presumed email address"; and (6) the Treasury should be "required to confirm through contemporaneous records that it has transferred or destroyed any . . . records such that it no longer 'possesses' these documents for purposes of FOIA." (Pls. Mem. 6–8.)

Pursuant to FOIA, federal district courts have jurisdiction to prevent an "agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (citing 5 U.S.C. § 552(a)(4)(B)). In order for a federal court to have jurisdiction it must be shown that an agency has "(1) improperly (2) withheld (3) agency records." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (internal quotation marks omitted) (citing *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)); *Romano v. C.I.A.*, No. 11-CV-5944, 2013 WL 210224, at *3 (E.D.N.Y. Jan. 18, 2013); *The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 355 (E.D.N.Y. 2009). A district court may force disclosure only when all three elements are met. *Grand Cent. P'ship*, 166 F.3d at 478 (citing *Tax Analysts*, 492 U.S. at 142). "When an agency has demonstrated that it has not 'withheld' requested records in violation of the standards established by Congress, the

federal courts have no authority to order the production of such records under the FOIA." *Kissinger*, 445 U.S. at 139.

The defending agency has the burden of showing that its search was adequate or that the document is exempt from production under FOIA. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *see also Flores v. United States Dep't of Justice*, 712 F. App'x 107, 108 (2d Cir. 2018) (same). The main sources of proof in a FOIA summary judgment motion are affidavits or declarations. *See Florez v. Cent. Intelligence Agency*, 829 F.3d 178, 182 (2d Cir. 2016) ("An agency may carry its burden by submitting declarations giving reasonably detailed explanations why any withheld documents fall within an exemption, and such declarations are accorded a presumption of good faith."); *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) ("In resolving summary judgment motions in a FOIA case, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence.").[2] Factual discovery "relating to an agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." *Grand Cent. P'ship*, 166 F.3d at 488 (alteration omitted) (citing *Carney*, 19 F.3d at 812). "[T]o establish the adequacy of a search, agency affidavits must be relatively detailed and nonconclusory, and submitted in good faith." *Id.* (alteration, citation, and internal quotation marks omitted). It is presumed that affidavits submitted by the agency were submitted in good faith. *Id.* After the agency has shown a good faith adequate search, the plaintiff must show that the agency acted in bad faith or show that any exemptions claimed by the agency are not appropriate in the case.

---

[2] "An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir. 1994).

*Anderson v. U.S. Dep't of Justice*, 326 F. App'x 591, 592–93 (2d Cir. 2009) (citing *Carney*, 19 F.3d at 812).

"When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request," the key question is whether the search "was reasonably calculated to discover the requested documents," and not whether every document in existence was found by the search. *Grand Cent. P'ship*, 166 F.3d at 489 (alteration and citation omitted); *Fox News Network, LLC v. U.S. Dep't of The Treasury*, 739 F. Supp. 2d 515, 533 (S.D.N.Y. 2010); *see also Adamowicz v. I.R.S.*, 402 F. App'x 648, 651 (2d Cir. 2010) ("[A]n agency need not show that its search uncovered every . . . responsive document [in existence], but only that it 'was reasonably calculated to discover the requested documents.'").

The Treasury submitted the declaration of Andrew B. Stein, Attorney-Advisor at the Treasury, in support of the Treasury's motion,[3] which describes in great detail the searches it conducted to obtain documents responsive to Plaintiffs' FOIA Request. (*See generally* Stein Decl.) OGC discussed Plaintiffs' FOIA Request with OES and OCIO because of the age of the records Plaintiffs sought. (*Id*. ¶ 6.) After doing so, the Treasury determined categories of records that constituted "the most likely sources of responsive materials." (*Id*.) The categories consisted of "OES electronic records from Ms. Sandberg's tenure at Treasury (1996 to 2000) maintained by the Office of the Secretary, Ms. Sandberg's emails from that period, and the current and former Secretaries' emails." (Def. Mem. 5; Def. 56.1 ¶ 5; Stein Decl. ¶ 6.) Treasury personnel searched its electronic records maintained by OES and "queried its electronic databases for all materials authored by Ms. Sandberg during her tenure at Treasury." (Stein

---

[3] As an Attorney-Advisor, Stein is responsible for the "coordination, review, and production of records collected in response to FOIA requests." (Stein Decl. ¶ 3.)

Decl. ¶ 9.) OGC reviewed the documents located and determined that one document was responsive in part to Plaintiffs' FOIA Request. (Stein Decl. ¶ 9; Responsive Document.) However, Treasury personnel were unable to search Sandberg's emails from 1996 to 2000 because, in 2000, the Treasury transitioned to a new email system and therefore "a majority of legacy emails sent or received prior to the transition are no longer maintained and are not accessible in any form." (Stein Decl. 7; Def. 56.1 ¶ 6.)

With respect to emails of the former and current Secretaries, the Treasury conducted a search of all available emails and electronic databases for documents responsive to Plaintiffs' FOIA Request concerning communications between the Secretaries and Sandberg from January 1, 2000 through May 17, 2018, the date of the search. (Stein Decl. ¶ 9.) Treasury personnel used various search terms that were reasonably likely to uncover relevant responses, including "Sandberg," "Sheryl," "Sheryl Sandberg," "@leanin.org," and "@facebook.org," but did not locate any responsive records. (Def. 56.1 ¶ 7; Stein Decl. ¶ 8.) The Treasury also reviewed records maintained by OES and did not identify any responsive notes of meetings between Sandberg and the Secretaries identified in Plaintiffs' FOIA Request. (Stein Decl. ¶ 8.)

Plaintiffs' various arguments as to methods the Treasury used to search for responsive documents are unavailing.

### i. Determination as to likely sources of responsive records

First, Plaintiffs challenge the OGC's "unilateral[] conclu[sion]" as to the likely sources of documents responsive to Plaintiffs' FOIA Request. (Pls. Mem. 6.)

However, contrary to Plaintiffs' assertion, the OGC worked with OES, which maintains the records of the Office of the Secretary and the Chief of Staff, and OCIO to identify sources of potentially responsive records. (Stein Decl. ¶ 6.) The offices discussed Plaintiffs' FOIA request

and determined the categories of records which constituted the most likely sources of responsive materials given the age and nature of the documents requested: "OES electronic records from Ms. Sandberg's tenure at Treasury (1996 to 2000) maintained by the Office of the Secretary, Ms. Sandberg's emails from that period, and the current and former Secretaries' emails." (Def. Mem. 5; Def. 56.1 ¶ 5; Stein Decl. ¶ 6.) Although Plaintiffs challenge whether these are in fact the "most likely" sources of responsive materials, Plaintiffs' speculation, without more, is insufficient to undermine the adequacy of the Treasury's searches. Stein's declaration, which is presumed to have been made in good faith, *see Florez*, 829 F.3d at 182 (finding that agency affidavits are presumed to be made in good faith), provides non-suspect reasons for the methods used by the Treasury, and Plaintiffs' mere speculation is not enough to show that the Treasury acted in bad faith. *See N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 123–24 (2d Cir. 2014) ("The adequacy of a search is not measured by its results, but rather by its method," and therefore, "a search is not inadequate merely because it does not identify all responsive records"), *opinion amended on denial of reh'g*, 758 F.3d 436 (2d Cir. 2014), *supplemented*, 762 F.3d 233 (2d Cir. 2014); *Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 55–56 (S.D.N.Y. July 26, 2018) (finding the agency's search adequate where "the search began by identifying the offices that could potentially possess responsive documents" and where the affidavit detailing the search explained why it was reasonable to look only at records from only specific components of different offices).

    ii.    **The Treasury's search terms**

Second, Plaintiffs question the search terms used to conduct the searches for records after Sandberg left the Treasury in 2000. Plaintiffs argue that the Treasury should have searched by "issue . . . such as the Financial Services Modernization Act . . . or the Commodity Futures

Modernization Act" rather than Sandberg's presumed email address. (Pls. Mem. 7–8.) Plaintiffs further argue "[t]hat Ms. Sandberg received (and presumably authored) such documents is beyond dispute" and "logically they likely will be located in the files of Secretary Summers." (*Id.* at 8.)

Although Plaintiffs did not provide search terms for Treasury personnel to use during the searches and the Treasury was not aware of Sandberg's email address(es) after she left the Treasury, the Treasury used various search terms that were reasonably likely to uncover relevant responses, including "Sandberg," "Sheryl," "Sheryl Sandberg," "@leanin.org," and "@facebook.org," but did not locate any responsive records. (Def. 56.1 ¶ 7; Stein Decl. ¶ 8.) Moreover, although Plaintiffs argue that the Treasury should have searched for documents by issues mentioned in their FOIA Request, Plaintiffs included those issues under category 1 of their FOIA Request, seeking Sandberg's records from 1996 to 2000. (FOIA Request 2.) The Treasury reviewed its electronic databases for all records authored by Sandberg during this period and "[a]fter a careful review, OGC identified one document response to category 1" of Plaintiffs' FOIA Request. (Stein Decl. ¶ 9.) An agency is not required to conduct every possible search and "need not knock down every search design advanced by every requester." *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)). Rather, it is an agency's "burden to show that its search efforts were reasonable and logically organized to uncover relevant documents." *DiBacco*, 795 F.3d at 191 (citing *SafeCard Servs.*, 926 F.2d at 1201).

Based on the terms used to conduct the searches and OGC's review of records during Sandberg's tenure at Treasury, the Treasury has made a sufficient showing that its determination as to categories of records likely to contain responsive materials "was reasonably calculated to

11

discover the requested documents."[4] *Adamowicz*, 402 F. App'x at 651 (citation omitted); *see also Doyle*, 331 F. Supp. 3d at 56 (rejecting the plaintiffs' argument "that the search terms . . . utilized were underinclusive, in that they did not contain certain terms that [the p]laintiffs would have included" because the agency's "search terms . . . were reasonably calculated to identify records responsive to [the p]laintiffs' FOIA request, and the [c]ourt will not second-guess the formulation of those terms").

### iii. Preservation of records

Third, Plaintiffs argue that the Treasury failed to preserve historical records. Plaintiffs rely on 49 C.F.R. § 1220.60 in support of their argument, (Pls. Mem. 6), but that regulation applies to railroad companies, electric railway companies, express companies, persons furnishing cars to railroads, and ratemaking organizations. *Id*. at § 1220.0. The Treasury's only obligation under FOIA was to search agency records. *Grand Cent. P'ship*, 166 F.3d at 478. "For requested materials to qualify as 'agency records,' two requirements must be satisfied: (i) an agency must either create or obtain the requested materials, and (ii) the agency must be in control of the requested materials at the time the FOIA request is made." *Id.* at 479 (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45 (1989)); *see also Bloomberg L.P. v. Bd. of*

---

[4] Plaintiffs argue that responsive documents exist at the Treasury because Plaintiff Stoller located "a memorandum to Secretaries Rubin and Summer, copying Chief of Staff Sandberg . . . in minutes after a cursory search of the Clinton Library's files." (Pls. Mem. 7; Mem. for Secretary Rubin ("Rubin Mem."), annexed to Decl. of Samuel M. Leaf as Ex. D, Docket Entry No. 28.) The Court declines to consider this argument because Plaintiff Stoller does not provide an affidavit or declaration detailing his search and, in any event, according to Plaintiffs' memorandum in opposition to the Treasury's motion for summary judgment, the Rubin Memorandum was discovered after a search of the Clinton Library's files, not the Treasury. (Pls. Mem. 7.) Stoller's recovery of the Rubin Memorandum at the Clinton Library is consistent with the Treasury's statement that eligible records were transferred to the National Archives and Records Administration and, as the Treasury correctly argues, the "mere existence of this document does not demonstrate that [the] Treasury's search of its own records was inadequate." (Def. Reply 9.)

*Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 272 (S.D.N.Y. 2009) (describing the two-part test for agency records), *aff'd sub nom. Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143 (2d Cir. 2010). Stein explains that as to Sandberg's email during her employment at the Treasury, including her tenure as Chief of Staff from 1996 to 2000, the Treasury's Director for Infrastructure Operations in the OCIO informed the OGC that in or about September of 2000, Departmental Offices transitioned to a new email system and therefore Sandberg's email account is no longer maintained by the Treasury and not accessible in any form. (Stein Decl. ¶ 7.) In addition, because the records Plaintiffs seek are more than fifteen years old, potentially responsive records have either been destroyed in accordance with the Treasury's applicable records schedules or permanent records transferred to the National Archives and Records Administration ("NARA"). The Treasury's destruction of records pursuant to published retention schedules does not undermine the adequacy of its searches. *See Conti v. U.S. Dept't of Homeland Sec.*, No. 12-CV-5827, 2014 WL 1274517, at *14 (S.D.N.Y. Mar. 24, 2014) (finding that the Department of Homeland Security "has no obligation to preserve its records according to the rules of civil discovery"); *Flowers v. I.R.S.*, 307 F. Supp. 2d 60, 71 (D.D.C. 2004) (finding that the Internal Revenue Service conducted an adequate search for records by providing a "non-suspect reason for the destruction" of documents by submitting "published document-retention schedules"); *Landmark Legal Found v. E.P.A.*, 272 F. Supp. 2d 59, 66–67 (D.D.C. 2003) ("FOIA does not impose a document retention requirement on agencies. Even where an agency was obligated to retain a document and failed to do so, that failure would create neither responsibility under FOIA to reconstruct those documents nor liability for the lapse.").

#### iv. Plaintiffs' request to confirm transfer or destruction of records

Lastly, Plaintiffs request that the Treasury "be required to confirm through contemporaneous records that it has transferred or destroyed any such records such that it no longer 'possesses' these documents for purposes of FOIA." (Pls. Mem. 8.) The Court denies Plaintiffs' request.

Stein, through his sworn declaration, states that any transferred materials are in the custody of the NARA and that "records from the Chief of Staff are temporary records under the applicable records schedule" and therefore "these records were long ago eligible to be destroyed and were not transferred to NARA." (Stein Decl. ¶ 10.) In addition, the Treasury states that Sandberg left her employment in 2000 and, in accordance with the three-year retention period applicable to Sandberg's records, (*see* Request for Records Disposition Authority, annexed to Stein Decl. as Ex. C, Docket Entry No. 25-3), the latest date for any "contemporaneous record" would have been 2003 and would not be in the possession of the Treasury. (Def. Reply 7 & n.6, Docket Entry No. 29.) Moreover, the Treasury represents that, if it possessed any responsive document, it would have located it, (*id.* at 7), and presumably the document would have been produced or the Treasury would have claimed an exemption under FOIA. Plaintiffs fail to provide any evidence contrary to the Treasury's representations. *See Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002) ("If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply."). Nor have Plaintiffs made any allegations of bad faith.

Accordingly, the Court finds that the Treasury has conducted a reasonable and adequate search for records responsive to Plaintiffs' FOIA Request and has satisfied its burden of

demonstrating that no responsive records were improperly withheld from Plaintiffs.  The Court therefore grants the Treasury's motion for summary judgment.

### III. Conclusion

For the foregoing reasons, the Court grants the Treasury's motion for summary judgment.  The Clerk of Court is directed to close this case.

Dated: April 27, 2019
      Brooklyn, New York

                                    SO ORDERED:

                                    _____s/ MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge